IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                                                                                    Case No.

WHATABURGER RESTAURANTS LLC

      Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Charging Party Vanessa Burrous ("Ms. Burrous") who was adversely affected by such practices.

The United States Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Whataburger Restaurants LLC ("Whataburger") subjected Ms. Burrous to a pattern of ongoing retaliatory conduct, ultimately causing her constructive discharge, after she opposed and refused to participate in Whataburger's racially discriminatory hiring directive to hire White—not Black— applicants.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Northern District of Florida, Tallahassee Division.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Whataburger has been a Texas corporation authorized to do and doing business in the State of Florida and within the City of Tallahassee, Florida, continuously having at least 15 employees.

5. At all relevant times, Whataburger has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEEDINGS

6. More than thirty days prior to institution of this lawsuit, Ms. Burrous filed an administrative Charge of Discrimination alleging that Whataburger violated Title VII.

7. Prior to the institution of this lawsuit, the EEOC issued a Letter of Determination indicating that it found reasonable cause to believe that Whataburger retaliated against Ms. Burrous and caused her constructive discharge.

8. Prior to the institution of this lawsuit, the EEOC attempted to effect Whataburger's voluntary compliance with Title VII through informal methods of conciliation to remedy the practices found unlawful.

9. All conditions precedent to the institution of this suit have been fulfilled.

## STATEMENT OF FACTS

10. Whataburger is a fast food restaurant chain that specializes in serving hamburgers.

11. Ms. Burrous, a white female, began her employment with Whataburger in June 2013, as a Manager Trainee.

12. That same year, Whataburger promoted Ms. Burrous to a Restaurant Manager position at its 2511 Apalachee Parkway, Tallahassee, Florida location. She became one of three managers at the Apalachee Parkway location.

13. Among other things, Ms. Burrous' responsibilities included hiring new crew members.

14. Ms. Burrous' direct supervisor was the General Manager, Johanna Risk ("Risk"), also a white female. Ms. Risk was the highest-ranked individual at the Apalachee Parkway location.

15. On or about April 2015, Risk began pressuring Ms. Burrous to hire white employees including, but not limited to, directing Ms. Burrous to review the names on applications, identify those names that sounded white, and to interview only those applicants.

16. Ms. Burrous opposed and refused to participate in the racially discriminatory hiring directive to hire White—not Black—applicants. Instead, Ms. Burrous continued to hire the most qualified applicants for vacant positions, regardless of race or color.

17. On or about April 2015, Ms. Burrous conducted open interviews of applicants who had applied online and hired eight crew members, seven of whom were black and one of whom was white.

18. This infuriated Risk and intensified her anger towards Ms. Burrous. Risk repeatedly reprimanded Ms. Burrous for not obeying her racially discriminatory hiring directives.

19. In May 2015, Ms. Burrous contacted Juanita Bass ("Bass"), a white female and the General Manager of a nearby Whataburger location, in an effort to seek a transfer to Bass's Whataburger location.

20. When Bass inquired as to the reason for the transfer, Ms. Burrous explained that she opposed Risk's racially discriminatory hiring directives and, in response, Bass recommended that Ms. Burrous speak with Misa Levin ("Levin"), the Area Manager over the five Tallahassee restaurant locations.

21. Ms. Burrous contacted Ms. Levin and complained to her that Risk directed her to hire White—not Black—applicants and again expressed her opposition and refusal to follow that directive.

22. A few days later, Levin met with Ms. Burrous and Risk in person at the Apalachee Parkway location and angrily told Ms. Burrous that Risk was not solely responsible for the discriminatory directive; rather, it was she (Levin) who gave the directive based upon pressure from "upper management."

23. Levin told Ms. Burrous that Whataburger's "customer base is white and we want the faces behind the counter to match the customer base." Levin said she hoped the meeting would "put the fire out." She warned Ms. Burrous that if she complained further she would not be protecting the brand.

24. Levin also threatened to use alleged past mistakes of Ms. Burrous—none of which had ever been previously subject to disciplinary action—against Ms.

Burrous if she persisted in exposing Whataburger's racially discriminatory hiring directives.

25. After Ms. Burrous' opposition and refusal to participate in Whataburger's racially discriminatory hiring directive to hire White—not Black—applicants, Risk began subjecting Ms. Burrous to ongoing retaliatory conduct designed to intimidate and upset Ms. Burrous and cause her to resign including, but not limited to:

 a. Engaging in emotional and verbal abuse;
 b. Cultivating of a climate of intimidation;
 c. Significantly increasing her workload;
 d. Reprimanding her for other managers' incomplete work;
 e. Ordering her to work on her scheduled days off without pay;
 f. Frequently yelling at, and belittling, her in front of customers and employees, bringing her to tears;
 g. Encouraging rumors and negative talk about her;
 h. Recruiting employees to write negative letters about her; and
 i. Changing her schedule to overnight shifts.

26. The ongoing retaliatory conduct directly led to Ms. Burrous' involuntary resignation.

27. In a letter explaining her involuntary resignation, Ms. Burrous stated, in part:

> Unfortunately, this resignation is due to the extremely hostile work environment and constant harassment I have endured. I reported to upper management that I had been asked to commit unethical and illegal acts of racial discrimination when making hiring decisions. There has since been an increasing and ongoing effort to retaliate and harass me. I have suffered endless gossip, threats, and abuse, both verbal and emotional, making the work environment intolerable for a reasonable person. I can no longer suffer the effects this abuse is having on my self-esteem, my confidence and my sense of self-worth.

28. Ms. Burrous has suffered damages as a result of Whataburger's conduct.

## STATEMENT OF CLAIMS

29. Paragraphs 10 through 28 are incorporated herein.

30. On a continuing basis since at least April 2015, Whataburger engaged in unlawful employment practices at its Apalachee Parkway, Tallahassee, Florida location in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Ms. Burrous for repeatedly opposing and refusing to participate in unlawful employment practices. Whataburger's conduct as described in paragraphs 10 through 28 resulted in Ms. Burrous' working conditions becoming so intolerable that a reasonable person in her

7

position would have felt compelled to resign, and caused her involuntary resignation.

31. The effect of the practices complained of in paragraphs 10 through 28 has been to deprive Ms. Burrous of equal employment opportunities and otherwise adversely affect her status as an employee because of her opposition to racial discrimination.

32. The unlawful practices complained of in paragraphs 10 through 28 were intentional and caused Ms. Burrous to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/ or physical damages.

33. The unlawful employment practices complained of in paragraphs 10 through 28 were intentionally done with malice and/or reckless indifference to Ms. Burrous' federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Whataburger, its officers, successors, assigns, and all persons in active concert or participation with them from engaging in retaliation against employees that object to, oppose and refuse to participate in unlawful practices such as racial discrimination;

B. Order Whataburger to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees who object to, oppose and refuse to participate in racial discrimination, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Whataburger to make whole Ms. Burrous by providing compensation for past and future pecuniary losses resulting from the unlawful practices described in paragraphs 10 through 28 including, but not limited to, back-pay, reinstatement (or front pay where reinstatement is unfeasible), prejudgment interest, and all out-pocket expenses, in amounts to be determined at trial;

D. Order Whataburger to make whole Ms. Burrous by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in paragraphs 10 through 28 including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E. Order Whataburger to pay Ms. Burrous punitive damages for its malicious and reckless conduct described in paragraphs 10 through 28 in amounts to be determined at trial;

F. Grant such further relief as the Court deems necessary and proper; and

G. Award the EEOC its cost of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Dated:  September 22, 2017.

        Respectfully Submitted,

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        U.S. Equal Employment
        Opportunity Commission
        131 M Street, N.E.
        Washington, D.C. 20507

        ROBERT WEISBERG
        Regional Attorney
        Florida Bar No: 285676
        KIMBERLY A. CRUZ
        Supervisory Trial Attorney
        Florida Bar No: 153729

        Equal Employment Opportunity
        Commission
        Miami District Office
        Miami Tower
        100 S.E. 2nd Street, Suite 1500
        Miami, Florida 33131
        Tel: 305-808-1790
        Kimberly.cruz@eeoc.gov

        */s/* Oshia Gainer Banks
        OSHIA GAINER BANKS
        TRIAL COUNSEL
        Lead Attorney for Plaintiff, EEOC
        Florida Bar No. 037022

                              U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (305) 808-1879
Oshia.Banks@eeoc.gov