IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Case No: 4:17-cv-00428-WS-CAS |
| | ) | |
| Plaintiff, | ) | |
| and | ) | |
| | ) | |
| VANESSA BURROUS, | ) | |
| | ) | |
| Intervenor, | ) | |
| vs. | ) | |
| | ) | |
| WHATABURGER RESTAURANTS LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLANTIFF UNITED STATES EQUAL EMPLOYENT OPPORTUNITY COMMISSION'S MOTION TO RETAKE THREE DEPOSITIONS, EXTEND THE DEADLINE TO RESPOND TO SUMMARY JUDGMENT, <u>AND FOR SANCTIONS AGAINST DEFENDANT WHATABURGER</u>**

Plaintiff, United States Equal Employment Opportunity Commission ("EEOC"), pursuant to Federal Rules of Civil Procedure 30(a)(2)(A)(ii), 37(c) and 56(d), respectfully requests (1) to take a second deposition of three key witnesses; (2) to extend the deadline to respond to Defendant Whataburger Restaurants LLC's ("Defendant" or "Whataburger") Motion for Summary Judgment; and (3) that the costs associated with re-taking the depositions be assessed as a sanction against Whataburger for improperly withholding key documents until six months after the discovery deadline.

## I.      Introduction

Throughout the entire underlying federal investigation and this litigation, Whataburger has denied that its leadership instructed managers to hire based upon the restaurant's "customer base," i.e. the racial makeup of the restaurant's local population.  It similarly denied retaliating against Charging Party, Vanessa Burrous, after she blew the whistle on the racially discriminatory hiring policy, with Whataburger upper leadership going so far as to deny even having knowledge of Ms. Burrous, her discrimination report, her subsequent constructive discharge, or her allegations which serve the basis of this lawsuit.  Whataburger's denials and feigned lack of knowledge were echoed throughout its written discovery responses, parroted by its company's witnesses during their depositions, and propelled as the basis for its motion summary judgment.

We now know, based on documents Whataburger produced six months after the discovery cutoff—after EEOC took ten discovery depositions—that Whataburger's denials and feigned lack of knowledge were demonstrably false. Indeed, recently-produced documents demonstrate that Whataburger leadership not only instructed that hiring be based on the "customer base," but that "customer base" includes the **racial makeup** of the population within a one-to-five-mile radius of the existing, prospective or "potential offset" Whataburger location.   Moreover, recently-produced documents demonstrate that – despite Whataburger's denials and feigned lack of knowledge, upper leadership was in fact aware that Ms. Burrous blew the whistle on the discriminatory hiring policy and, in response, retaliated against Ms. Burrous in furtherance of the discriminatory hiring policy and in direct response to her allegations including, among other things, attempting to dig dirt on Ms. Burrous (unsuccessfully).

Defendant's tactic of moving for summary judgment while simultaneously concealing incriminating documents that go to the very heart of this case should not be rewarded nor condoned.   EEOC respectfully requests to take second depositions—limited to three-hours each—of Misa Levin Eurvin Fuller and a third deponent to discuss key documents that Whataburger improperly withheld from production until six months after the discovery cut-off and after EEOC had already taken these depositions.  EEOC also requests that costs be assessed as a sanction

against Whataburger for improperly withholding said documents, to include the costs EEOC incurs in having to retake the depositions.

## II.    Facts

EEOC filed this lawsuit against Whataburger on September 22, 2017, alleging that Whataburger subjected Vanessa Burrous to retaliation, and constructively discharged her, after she complained about a racially discriminatory hiring directive to hire White—and not Black—applicants for employment. [Doc. 1; *see also* Doc. 99].  Ms. Burrous alleges that she was told to hire only White applicants because the "customer base is white and we want the faces behind the counter to match the customer base." [*Id.*].  Ms. Burrous first attempted to transfer to avoid this unlawful directive, but her request was denied.  She subsequently complained to upper management, but Area Manager Misa Levin instructed her the directive came from even higher-level management.  Indeed, Whataburger produced an e-mail from Regional Director of Operations, Eurvin Fuller, asking: "Do the teams reflect the customer base where we do business?" [Exh. 1].  Having been told that the directive to hire Whites came from above, and in the face of severe retaliatory conduct including but not limited to threats to go to human resources and use "prior mistakes" against her, Ms. Burrous was constructively discharged.

EEOC propounded its First Request for Production and First Set of Interrogatories to Whataburger on December 7, 2017, immediately after the parties

concluded their case management conference.    Among other things, EEOC requested information regarding Whataburger's investigation into Ms. Burrous's allegations. [*See*, Doc. 81 at 5-6, Request No. 1-23].

After several extensions, Whataburger responded to EEOC's discovery requests on February 5, 2018, and produced documents between February 9, 2018 and March 2, 2018.    However, Whataburger refused to produce documents pertaining to its customer base analysis and the alleged "investigation," claiming work-product and attorney-client privilege.

Given the discovery disputes, and following extensive conferrals in February and March, on April 6, 2018, EEOC moved for leave to file up to four motions to compel or, in the alternative, one motion which exceeded the word-limit. [Doc. 35]. On April 30, 2018, the Court granted EEOC's motion, but "strongly encouraged [the parties] to seek resolution without judicial involvement or to at least narrow the issues to be resolved." [Doc. 38].  After further conferral, in May 2018, EEOC filed its Motion to Compel Better Responses to its First Set of Discovery.  [Doc. 43.] EEOC's Motion to Compel requested, among other documents, communications regarding Ms. Burrous and communications regarding any investigation into Ms. Burrous's allegations.  [Doc. 43 at 45-54]

On June 8, 2018 and July 30, 2018, Whataburger produced additional documents responsive to EEOC's December 2017 discovery requests, but still

maintained privilege over "investigation" documents.

Following Whataburger's production of documents, and while waiting for the Court's ruling on the Motion to Compel, EEOC pushed forward with discovery. Throughout the fall of 2018, EEOC conferred with Whataburger over additional custodians and search terms, as well as the discoverability of Whataburger's 1000+ back-up tapes, what might be on such tapes, and the dates and custodians that might be on such back-up tapes. Defendant produced additional documents at that time, but still not the "investigation" documents. The United States federal government shutdown from December 22, 2018, through January 25, 2019. [*See,* Doc. 77]. Thereafter, when the Government reopened, EEOC continued to confer on outstanding discovery with Defendant, and began setting depositions given the impending fact discovery deadline of in April 2019 (which was extended to June 2019 because of the government shutdown). [*See*, Doc. 80]. During this time, Defendant still refused to produce "investigation" documents.

EEOC filed an Amended Motion to Compel on May 7, 2019, narrowing the issues before the Court, but still including a request that "investigation" documents be compelled. [Doc. 81]. Given the impending fact-discovery deadline, EEOC was forced to take the depositions of Misa Levin (the Area Manager who told Ms. Burrous that the directive to not hire Black applicants came from even higher-level management), Eurvin Fuller (Regional Director of Operations who testified that he

directed Levin and others that the "teams match the customer base"), and Kevin Patterson (the Human Resources official at the center of Whataburger's supposed "investigation) without the benefit of the "investigation" documents that Whataburger refused to produce on the ground of privilege, and without documents concerning Whataburger's "customer base". At the time, EEOC did not even know Eurvin Fuller was involved in the supposed "investigation" as he testified that he had never seen Ms. Burrous's resignation letter nor charge of discrimination, that no one, not even Tom Robison, ever reported hiring discrimination to him, and that no one from legal or human resources—not even Kevin Patterson—ever spoke with him about Ms. Burrous or the allegations in this lawsuit. [*See*, Doc. 108-002, Fuller Dep. at 11-14; 96].

EEOC's Second and Third Motions to Compel were filed on May 9, 2019. [Docs. 83, 84]. These motions dealt specifically with Whataburger not producing documents related to its "customer base". [Doc. 83 at 12-13.] These motions also dealt specifically with the deficiencies of Whataburger's privilege log, [*id.* at 14-16], which were related to Whataburger's baseless claim of privilege as to "investigation" documents.

When discovery closed on June 3, 2019, EEOC had taken ten depositions, including the depositions of Misa Levin, Kevin Patterson and Eurvin Fuller, without the benefit of documentation concerning Whataburger's "customer base", who knew

6

what and when about Ms. Burrous's allegations, and the subsequent "investigation" Whataburger claimed to have undertaken.

On October 31, 2019, the Court ruled on EEOC's outstanding motions to compel and ordered Whataburger to produce, among other things, documents concerning Whataburger's "customer base" and alleged "investigation" into Ms. Burrous's allegations. [Doc. 110].   In response to the Court's Order, between December 4 and December 13 (six months after the discovery cut off), Defendant produced over 4,000 pages of documents, many of which are highly relevant, key documents that detail the events alleged in the Complaint, contradict the testimonies of Whataburger's company's witnesses, and counter arguments Whataburger raised in its motion for summary judgment:

- Whataburger059226 [Exh. 2]: Email from Misa Levin to her Supervisor, Senior Area Manager Tom Robison, copying Kevin Patterson.   The e-mail details Levin's version of events between February 2015 and July 2015, including Ms. Burrous's complaint of a racially discriminatory hiring directive.   The e-mail is akin to a witness statement on the key events alleged in the Complaint and directly contradicts Levin's deposition testimony and prior written statements. No lawyers are copied on the email.   The email explicitly states it is written at the direction of Tom Robison, who is upper management, and not at the direction of any attorney.

- Whataburger059115 [Exh. 3]: Email chain that includes another statement from Misa Levin about Ms. Burrous's complaint of a racially discriminatory hiring directive.   Kevin Patterson subsequently asks, "Do we need to get legal or HR involved in this claim?"   During Robison's February 6, 2020, deposition, he admitted that legal was *not involved as of September 1, 2015, despite Whataburger's claim of privilege.*   In addition, the e-mail directs Kevin Patterson to take certain

7

steps in Whataburger's purported "investigation."  Robison testified that, to his knowledge, not all steps were taken.  No lawyers are copied on the email.

- Whataburger059218 [Exh. 4]: Email chain from Kevin Patterson asking Misa Levin key questions about her interactions with Vanessa Burrous.  No lawyers are copied on the email.

- Whataburger059064 [Exh. 5]: Email chain between Kevin Patterson and Leslie Mattingly (HR) about whether to contact Ms. Burrous after her resignation.  No lawyers are copied on the email.

- Whataburger059052 [Exh. 6]: Email chain stating that Tom Robison has "aligned with Eurvin" regarding Vanessa's retaliation complaint/resignation letter, and showing that Eurvin Fuller followed up on same (directly contradicting Eurvin Fuller's deposition testimony that he had never heard about Ms. Burrous's allegations prior to this lawsuit, was never told about a racially discriminatory hiring policy prior to this lawsuit, and was never involved in an investigation). [*See*, Doc. 108-10, Fuller Dep. at 11-14; 96].  No lawyers are copied on the email.

- Whataburger059050-051 [Exh. 7]: Email chain showing that, in response to Ms. Burrous's allegations, management and human resources retaliated by, among other things, attempting to find write-ups ("prior mistakes") to use against her.

- Whataburger060499 [Exh. 8]: Notes demonstrating that Eurvin Fuller visited Tallahassee and met with management on or around April 27, 2015, days before Fuller's email to Levin and others regarding the Whataburger teams needing to "match the customer base."

- Whataburger062162 and Whataburger062165: documents demonstrating that Whataburger's "customer base" includes the racial make-up of those within a 1-5 mile radius of an existing, prospective or "projected offset" Whataburger restaurant, directly contradicting the testimonies of all Whataburger company witnesses as to the meaning of "customer base".[1]

---

[1] These documents are not attached as Whataburger has marked them as confidential.

- Whataburger058755, 758, 760, 761 [Exh. 9]: Levin Regional Training Manager application demonstrating that during the relevant time-period (April 2015), Levin identified "Eurvin Fuller" as her "upper leadership"—the very term alleged by Ms. Burrous in her underlying report as being used by Misa Levin.  The document directly contradicts the prior testimony of Eurvin Fuller that Levin never reported directly to him.

- Whataburger058581 [Exh. 10]: Levin Performance Coaching Document, directly contradicting Levin's prior testimony that she resigned from Whataburger, directly contradicting prior testimony of Whataburger company witnesses who feigned a lack of knowledge regarding any disciplinary action pertaining to Levin, and demonstrating an explanation as to why Whataburger failed to produce any 1:1 meeting notes concerning Levin and upper management, including the "RDO" [Eurvin Fuller].

These documents and others are directly related to Defendant's summary judgment arguments.  Indeed, Defendant devotes most of its summary judgment motion to arguing that EEOC lacks evidence regarding who knew what, when they knew it, and how they responded to it. [*See, e.g.,* Doc. 105 at 36 (arguing that "there is no evidence that higher management countenanced or approved of Risk's retaliation, much less even **knew** about the alleged retaliation") (emphasis in Defendant's Motion); *id.* at 33 (arguing that Defendant did not have "the opportunity to correct the alleged unbearable working conditions")].  However, the newly-produced documents—produced six months after the discovery deadline—now show that "upper management" Tom Robison and Eurvin Fuller discussed Ms. Burrous's allegations, resignation and the "investigation" into her claims with Misa

9

Levin and Kevin Patterson.  Notably, no lawyers were involved in these discussions nor did any of these business people act on the direction of lawyers to even support a claim of work-product or attorney-client privilege.   The privilege claim was baseless.

As discussed in detail below, re-opening depositions of witnesses is warranted under case law and the relevant facts.  EEOC was forced to take witness depositions and would be forced to respond to summary judgment without the benefit of deposing key witnesses on their involvement in these claims, which the newly-disclosed documents demonstrate is different from what witnesses have testified to date.  EEOC would similarly be forced to present the case before a jury without the benefit of having deposed witnesses concerning the key documents.   Whataburger should not be rewarded for improperly withholding key documents until after the close of discovery.

### III.   Discussion

A. <u>Legal Standard</u>

Courts have the inherent authority to order a second deposition.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).   "Courts have typically reopened a deposition where a witness was inhibited from providing full information at the first deposition or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Hill v. Tran*, No. 16-00102-WS-N,

2016 WL 10043467, *2 (S.D. Ala. Sep. 19, 2016) (internal quotes and citations omitted); *see also Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 692 (D. Kan.1996) (production after first deposition of document containing statement by witness warranted second deposition). Here, as set forth below, second depositions are warranted where critical documents were intentionally withheld and produced after the close of discovery.

Moreover, cases in the Eleventh Circuit are legion that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (collecting cases); *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997) (same); *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (explaining that "[s]ummary judgment should not . . . ordinarily be granted before discovery has been completed."). Indeed, fairness to the non-movant dictates that "summary judgment may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988).

The Eleventh Circuit also requires district courts to rule on discovery motions prior to considering motions for summary judgment. *See Snook*, 859 F.2d at 871 (explaining that "[t]he district court should have ruled on the motion to compel prior to entering summary judgment for the defendants"); *Jones,* 120 F.3d at 253 (finding

that district court abused its discretion in deciding summary judgment motion where plaintiffs had not examined requested documents or deposed defendant's witnesses); *Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996) (explaining that "it is error for a district court to decide a summary judgment motion before ruling on an outstanding motion to compel").

A non-movant's entitlement to an extension of time to respond to a motion for summary judgment is built into Federal Rule of Civil Procedure 56 to guard against the entry of premature motions for summary judgment.  Specifically, Rule 56(d) permits a non-movant to move for an extension of time to respond to a motion for summary judgment after motions to compel have been ruled upon and discovery is complete. Fed. R. Civ. P. 56(d); *Travelers Cos., Inc. v. Carrillo*, 313CV267J99MMHPDB, 2013 WL 12388594, at *3 (M.D. Fla. Dec. 11, 2013) ("A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary judgment motion."). "In essence, Rule 56(d) provides a 'safety net' for parties who need further time to obtain facts essential to oppose a motion for summary judgment." *Cordero v. Readiness Mgmt. Support, L.C.*, 6:11-CV-1692-ORL-19, 2012 WL 3744513, at *3 (M.D. Fla. Aug. 29, 2012) (citing *Jones v. Secord,* 684 F.3d 1, 6 (1st Cir. 2012) (citing cases).

B. <u>EEOC Should Be Entitled to take a Second Deposition of Misa Levin, Eurvin Fuller and a Fourth Deponent to be Later Identified.</u>

   *1. Misa Levin*

EEOC seeks to take a second deposition, limited to three hours, of Misa Levin given that Whataburger withheld key documents wherein she details the key events at the heart of this this lawsuit, which contradict her prior deposition testimony and prior statements submitted to EEOC, and which are directly responsive to Defendant's summary judgment motion.  Again, as detailed above, Defendant argues in its summary judgment motion that EEOC lacks evidence regarding who knew what, when they knew it, and how they responded to it. [Doc. 105 at 36, 33]. Here, Ms. Levin's newly produced e-mails show that upper management was involved and knew of Ms. Burrous's allegations.  Indeed, Levin writes: "**All conversations that I had with Vanessa were first discussed with my upper leadership for guidance and then I updated them on how the conversation went.**"  [Exh. 2].  Particularly given Whataburger's summary judgment argument, EEOC should have an opportunity to question Ms. Levin about this email.

Defendant may argue that a second deposition with Levin is not warranted because EEOC already used its seven deposition hours.  Undoubtedly, however, had Defendant not improperly withheld the documents, EEOC would have allotted its time to cover the most relevant documents in this case.  EEOC had no choice but to move forward with Ms. Levin's deposition despite not having obtained all document

discovery.

Defendant may further argue that Levin's e-mail is about Whataburger's underlying hiring discrimination, whereas EEOC's claims are for retaliation and constructive discharge. However, the retaliation against Ms. Burrous and her constructive discharge is wholly enmeshed with the underlying hiring discrimination complaint. Ms. Burrous first attempted to transfer to avoid the racially discriminatory hiring directive. She then complained a second time and was told the directive came from upper management and that, if she didn't "put out the fire", human resources would be involved and "past mistakes" would be used against her. Meanwhile, when she complained about the directive, she suffered retaliation including, but not limited to, Whataburger management and human resourcesattempting to find write-ups ("prior mistakes") to use against her. [Exh. 7]. Ms. Burrous's constructive discharge was about both the directive to hire White—not Black—applicants *and* Whataburger's retaliatory conduct in furtherance of its discriminatory hiring policy.

In sum, EEOC should be permitted to take a second deposition of Misa Levin as Defendant withheld these documents without basis while EEOC had to take Ms. Levin's deposition.

### 2. *Eurvin Fuller*

EEOC also seeks to take a second deposition of Eurvin Fuller, limited to three hours.  Again, Defendant argues in its summary judgment motion that Fuller had no knowledge of Ms. Burrous's retaliation complaints. [Doc. 105 at 37 (arguing that "Fuller did not know or even discuss Burrous").]  The newly produced documents, however, demonstrate that Fuller was aware of, and discussed, Ms. Burrous's resignation letter/complaint of discrimination and retaliation, and even followed up on the investigation into her allegations.  [*See* Exh. 6.]  Fuller—a high level Whataburger manager—*did* know about Ms. Levin's discrimination and retaliation complaints—despite his sworn assertions otherwise—and EEOC has a right to ask him what, if anything, he did about them.

 EEOC further seeks to ask him about documents demonstrating that Whataburger's analysis of its customer base indeed includes race—something else Mr. Fuller vehemently denied during his first deposition.

Defendant may argue that the newly produced documents are irrelevant because Ms. Burrous did not complain about retaliation until after she quit.  In the Eleventh Circuit, however, the circumstances surrounding what happened—if anything—after an employee submits a resignation letter is important in analyzing constructive discharge claims.  As set forth in *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518 (11th Cir. 1991):

Under this standard, we find that the formal written reprimand by Fick and Bellerose, the criticism by Hill's supervisors in the few weeks following her jury service, and the withdrawal of Fick's customary support of the produce department did not create intolerable working conditions that would compel a reasonable person to resign, especially in light of the short duration of time within which these events occurred **and in light of Winn-Dixie's attempts to rectify the situation with Hill in the two weeks following the submission of her resignation**.

*Id.* at 1527 (emphasis added); *see also Lawrence v. Wal-Mart Stores*, 236 F. Supp. 2d 1314, 1335 (M.D. Fla. 2002) (denying summary judgment where, among other facts, defendant offered to transfer plaintiff to any area he wanted after his resignation).  Likewise, Fuller's action-or inaction-is relevant to Defendant's motion for summary judgment on the *Faragher/Ellerth* defense.  *See e.g. Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, (5th Cir. 2016) (holding that employer took prompt remedial action to address misconduct when it immediately investigated allegations raised by plaintiff after she resigned); *Chaloult v. Interstate Brands Corp.*, 540 F.3d 64, 74 (1st Cir. 2008) (holding that employer was entitled to summary judgment on *Faragher/Ellerth* defense and noting that there was no dispute that the employer acted reasonably once employee resigned and put defendant on notice of the alleged sexual harassment); *Bakalova v. Maimonides Medical Center*, 83 F. App'x 372, 375 (2nd Cir. 2003) (affirming district court's summary judgment on *Faragher/Ellerth* defense where employer's written policy "was effected in Dr. Bakalova's [plaintiff] case by means of a thorough investigation of her sexual harassment claims once MMC [defendant] was made aware of them

[through her resignation letter]."). Perhaps because it did not act reasonably, Defendant seeks to draw an artificial timeline after Ms. Burrous resigned, to suggest that its failure to take appropriate action is irrelevant. [*See* Doc. 105, Defendant's Motion for Summary Judgment at 23, 28 (arguing that it "exercised reasonable care to . . . correct the alleged misconduct" pursuant to *Faragher/Ellerth* but that "Whataburger is not relying and need not rely on any post-resignation investigation to support its *Faragher/Ellerth* defense.")]. Be that as it may, EEOC is entitled to depose Fueller as to his role in the investigation.

    *3. Third Deponent to be Determined*

EEOC further seeks leave to take a third deposition in this action that it would identify after retaking the depositions of Levin and Fuller. It would likely be either Kevin Patterson or a third unknown witness.

    a. *Patterson:* Whataburger has produced significant additional discovery from Patterson showing that he asked key questions of Levin during his investigation; that he was given specific instructions to follow as part of his investigation; and that he asked supervisors about contacting Ms. Burrous in writing to address her retaliation complaints. Regrettably, EEOC did not have the benefit of any of these documents when it deposed Mr. Patterson. Moreover, the documents demonstrate that Patterson was specifically instructed to obtain the racial make-up of

17

recent hires –something he apparently did not do.  Instead, he sought to obtain write-ups on Ms. Burrous.

b. *Alternative Third Witness:*  Because EEOC is unaware of what Levin or Fuller will testify—particularly about the upper management that approved Levin's actions with regard to Ms. Burrous—EEOC seeks the flexibility to identify a third deponent after it takes these depositions. At that point, EEOC would be in a better position to determine whether it is more important to depose Patterson or a different person (for a total of three depositions).

C. <u>EEOC Should Be Awarded its Costs Incurred in Having to Reopen the Depositions.</u>

EEOC requests that the Court order Defendant to pay for the costs of the second depositions as a sanction under Federal Rule of Civil Procedure 37.  Having reviewed the newly produced documents [including, but not limited to, Exhs. 2 -10], it is apparent that they are crucial documents in the case, and that Whataburger had no reasonable basis for withholding them as privileged or otherwise.  Indeed, the documents do not copy counsel; the documents state on their face that they are being written at the direction of management (not counsel) [*see* Exh. 2]; and although many of the documents are circulated in August, it is not until September 1, 2015, that Patterson asks, "Do we need to get legal or HR involved in this claim," [Exh. 3.]  *Indeed, Tom Robison testified at his deposition on February 6, 2020, that*

18

*Whataburger counsel was not involved until sometime after September 1, 2015.* The reality is that when Ms. Burrous submitted her resignation/complaint of discrimination and retaliation—the investigation was handled by Whataburger's managers and human resources, not counsel. Whataburger withheld the documents from production to avoid producing key, highly relevant, incriminating documents. EEOC was prejudiced as a result.

Whataburger improperly withheld these documents, necessitating the second round of depositions. For this reason, Whataburger should pay for all costs of the second depositions, including travel and/or order that the depositions of witnesses represented by Whataburger take place at EEOC's Miami District Office. *See Baker v. Eichholz*, No. CV406-021, 2007 WL 9702884, * (S.D. Ga. Dec. 4, 2007) (awarding costs of second deposition where "defendants could have avoided all costs for the second deposition by answering the properly lodged questions at the first deposition."); *In re Brican America LLC Equpment Lease Litigation*, No. 10–md–02183–SEITZ, 2013 WL 5519969, *14 (S.D. Fla. Oct. 1, 2013) (ordering defendant to pay costs associated with scheduling and facilitating a second deposition for failure to adequately produce witness at initial deposition; declining to award travel costs because the deposition will occur where Plaintiff's counsel is located).

19

## IV.   Conclusion

For the foregoing reasons, EEOC respectfully requests that the Court grant its motion and (i) allow EEOC to take four depositions; (ii) extend the deadline for responding to summary judgment; and (iii) order Whataburger to pay for the costs incurred by EEOC in taking the additional depositions.

## Certificate of Conferral

The undersigned certifies that EEOC conferred with Whataburger's and Plaintiff-Intervenor's counsel prior to filing this Motion.  Counsel for Plaintiff-Intervenor Vanessa Burrous joins the motion.  Counsel for Whataburger opposes EEOC's requests to reopen the depositions and costs.  Counsel for Whataburger states that if the Court permits EEOC to reopen the depositions, it would not oppose the extension of time to respond to summary judgment.

## Rule 7.1(F) Certificate of Word Count

The undersigned certifies that this Motion contains 4,704 words in compliance with Northern District of Florida Local Rule 7.1(F).

Respectfully submitted,

*s/ Oshia Gainer Banks*
OSHIA GAINER BANKS
Trial Attorney
Florida Bar No. 037022
U.S. Equal Employment Opportunity
Commission
Miami District Office
Miami Tower
100 SE 2nd Street
Miami, Florida 33131
Tel: (305)808-1879
Fax: (305)808-1835
oshia.banks@eeoc.gov
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>February 7, 2020</u>, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send an electronic notification to all counsel of record including  S. Gordon Hill, ghill@hwhlaw.com, and Jeffrey J. Wilcox, jwilcox@hwhlaw.com, HILL WARD & HENDERSON, P.A., 101 E. Kennedy Blvd., Suite 3700, Post Office Box 2231, Tampa, FL 33601-2231, and Richard E. Johnson, richard@nettally.com, Law Office of Richard E. Johnson, 314 West Jefferson Street, Tallahassee, FL 32301.

*s/ Oshia Gainer Banks*
OSHIA GAINER BANKS

21